**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 17, 2026

**BY ECF AND EMAIL**
The Honorable Colleen McMahon
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re: *United States v. Jose Manuel Alcequiez-Garcia*, 25 Cr. 323 (CM)**

Dear Judge McMahon:

The Government respectfully submits this letter in advance of the sentencing of defendant Jose Manuel Alcequiez-Garcia, scheduled for February 24, 2026, at 3:00 p.m. For the reasons set forth below, the Government respectfully requests that the Court impose a sentence of 42 months' imprisonment, to be followed by one year of supervised release. Such a sentence would be sufficient but not greater than necessary to serve the purposes of sentencing and would adequately reflect the seriousness of the defendant's criminal conduct.

## I. Offense Conduct

On January 22, 2025, the defendant was arrested while transporting approximately 4.77 kilograms of fentanyl, which had been trafficked into Manhattan from Philadelphia. (PSR ¶¶ 8–14). At about 12:02 p.m. on that date, law enforcement officers conducted a traffic stop on a white Honda sedan in the Washington Heights neighborhood of Manhattan. The officers observed the white Honda commit several vehicle and traffic violations. (*Id.* ¶ 10). The officers identified the driver and passenger of the vehicle, respectively, as Alcequiez-Garcia and his co-defendant Elvin Ramirez-Paniagua. (*Id.* ¶ 11). The defendant said that the vehicle belonged to him and verbally consented to a search of the vehicle and its contents. (*Id.*).

During the search, the officers found a blue backpack in the trunk of the vehicle. (*Id.* ¶ 12). The officers opened the backpack and discovered a plastic bag that contained nine plastic sleeves filled with blue pills. (*Id.*). The officers field-tested a sample of the blue pills, which tested positive for fentanyl. (*Id.*). The pills weighed approximately 4.77 kilograms in total. (*Id.*).

After the search, the officers read the defendant and Ramirez-Paniagua their Miranda rights, which they then waived. (*Id.* ¶ 13). The defendant and Ramirez-Paniagua then independently admitted that they both knew that the backpack contained narcotics that were being

trafficked into Manhattan from Philadelphia. (*Id.*). They also consented to a search of their cellphones. (*Id.*).

The officers then searched defendant's phone and discovered multiple voice and text message conversations on WhatsApp between the defendant and a third co-defendant, Cristian Alonso Castro-Corona. (*Id.* ¶ 14). The conversations revealed that Castro-Corona was the source of the narcotics that had been seized during the traffic stop and that the narcotics had been sent in packages via the mail from Castro-Corona to the defendant. (*Id.*). The officers then arrested both the defendant and co-defendant Ramirez-Paniagua. (*Id.* ¶ 15).

## II. Criminal History

The defendant has no prior criminal convictions. (*Id.* ¶¶ 35).

## III. Procedural History

On January 23, 2025, the day after the traffic stop, the defendant was charged by complaint with one count of conspiring to distribute and to possess with intent to distribute 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 846, and one count of distributing and possessing with intent to distribute the same, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 18 U.S.C. § 2. (Dkt. 1). On the same date, the defendant was presented before the Honorable Judge Sarah L. Cave, United States Magistrate Judge for the Southern District of New York, and ordered detained.

On or about July 17, 2025, a grand jury sitting in this district returned Indictment 25 Cr. 323 (CM) (the "Indictment"), charging the defendant in Count One with conspiring to distribute and to possess with intent to distribute 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 846, and in Count Two with distributing and possessing with intent to distribute the same, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. (Dkt. 28).

The defendant is safety-valve eligible.

## IV. The Defendant's Guilty Plea and Applicable Guidelines Range

On October 31, 2025, the defendant pleaded guilty to Count One of the Indictment before the Honorable Sarah Netburn, United States Magistrate Judge for the Southern District of New York, pursuant to a written plea agreement dated September 8, 2025 (the "Plea Agreement"). On December 11, 2025, this Court accepted the defendant's guilty plea.

In the Plea Agreement, the parties stipulated that the Guidelines range was 70 to 87 months' imprisonment based on an Offense Level of 27 and a Criminal History Category of I. (Plea Agreement at 3). The Probation Office agrees with these calculations. (PSR ¶ 75).

## V. Applicable Law

Although the Supreme Court has held that the United States Sentencing Guidelines are not mandatory, district courts are still required to "consult" the Guidelines and "take them into account" when determining a sentence. *United States v. Booker*, 543 U.S. 220, 264 (2005). As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After making that initial calculation, a sentencing judge must consider the seven factors outlined in 18 U.S.C. 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2).

## VI. A Below-Guidelines Sentence of 42 Months' Imprisonment Is Appropriate.

The defendant conspired to traffic a large amount of fentanyl, which would in the normal course make him subject to a ten-year mandatory minimum penalty. Because the defendant is safety-valve eligible, however, the Court may sentence him to below ten years. In addition, because the Guidelines account for the defendant's lack of criminal history—via a two-level reduction for being safety-valve eligible and an additional two-level reduction for being a zero-point offender—the applicable Guidelines range is 70 to 87 months' imprisonment. Probation recommends a sentence of 36 months' imprisonment. (PSR at 20). The Government agrees with Probation that a below-Guidelines sentence is appropriate but asks that the Court impose a sentence of 42 months' imprisonment. Such a sentence reflects the seriousness of the defendant's conduct and provides just punishment for at least five reasons.

*First*, the distribution of kilogram quantities of fentanyl is a serious offense. As a general matter, trafficking drugs in quantities large enough to trigger the 10-year mandatory minimum penalty in 21 U.S.C. § 841(b)(1)(A) is a very serious crime. Trafficking such quantities of fentanyl

is an even graver matter, given that fentanyl is a uniquely lethal narcotic. According to the DEA, a mere two milligrams of fentanyl can amount to a fatal dose.[1] Here, the defendant conspired to distribute 4.77 kilograms of mixtures and substances containing a detectable amount of fentanyl—potentially more than four million lethal doses. Because fentanyl is particularly dangerous—and because of the historic death toll attributable to fentanyl overdoses in this country[2]—courts have imposed substantial sentences on individuals who traffic it in large quantities, even those, like the defendant, who were safety-valve eligible and whose role was primarily that of transporting the drugs. *See, e.g.*, *United States v. Evangelista*, 24 Cr. 629 (LAP) (S.D.N.Y.) (imposing 60-month sentence on a safety-valve eligible courier who delivered 7.5 kilograms of fentanyl, whose Guidelines range was 70 to 87 months).

*Second*, a substantial sentence is also necessary to provide adequate specific and general deterrence. At the time of the offense, the defendant was a 41-year-old man with no criminal history. It is difficult to understand why the defendant joined this fentanyl-trafficking conspiracy, and there is no reason to believe that, had the defendant not been caught, he would have stopped on his own. Accordingly, a significant sentence is necessary both to teach the defendant that trafficking kilogram quantities of narcotics will not make him easy money and to send the same message to individuals who think like him.

Although the seriousness of the offense weighs in favor of a significant sentence, the remaining three factors militate in favor of leniency, but, respectfully, not to the degree sought by the defendant or by Probation. Those factors are as follows:

*First*, the defendant lacks any criminal history. The instant offense, although very serious, is non-violent and the defendant does not otherwise appear to be a danger to the community.

*Second*, and crucially, the defendant quickly accepted responsibility for his actions [redacted]

---

[1] *See* Facts About Fentanyl, DEA, https://www.dea.gov/resources/facts-about-fentanyl (last visited January 9, 2026).

[2] *See* U.S. Overdose Deaths Decrease Almost 27% in 2024, CDC (May 14, 2025), https://www.cdc.gov/nchs/pressroom/releases/20250514.html (noting that in 2024 approximately 80,000 people died from drug overdoses, roughly 48,000 of which were attributable to opioids like fentanyl).

[redacted][3]

*Third*, a 42-month sentence would not create unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. As set forth in the PSR, according to the United States Sentencing Commission's Judiciary Sentencing Information database, between 2020 and 2024, there were 404 defendants sentenced under U.S.S.G. § 2D1.1 with the same offense level (27) and Criminal History Category (I) as the defendant and where fentanyl was the primary drug type at issue. (PSR at 17). All of those defendants received a sentence of imprisonment. (*Id.*). After excluding defendants who received a substantial assistance departure, the average length of imprisonment was 51 months, and the median was 54 months. (*Id.*). [redacted]

While Alcequiez Garcia is the first of four defendants that Your Honor will sentence in this case, a 42-month sentence will not create an unwarranted disparity among the four defendants. Alcequiez Garcia is less culpable than Castro-Corona, who was the leader and organizer of the trafficking operation—facilitating the transportation of fentanyl from Mexico into and throughout the United States. Thus, although the Government will seek a lengthier sentence for Castro-Corona than Alcequiez Garcia, the differential is justified by meaningful differences in their criminal conduct [redacted]. Co-defendant Rubio-Iribe participated in the trafficking operation by packaging the narcotics and retrieving packages containing narcotics from the post office. (PSR ¶ 14). Lastly, Ramirez-Paniagua played substantially the same role in the conspiracy as Alcequiez-Garcia, and depending on the application of the 3553(a) in that case the Government intends to seek a sentence of at least 42-months' imprisonment for Ramirez-Paniagua. (PSR ¶¶ 8–14). In sum, the requested sentence would not result in unwarranted sentencing disparities among similarly situated defendants—both in this case and more broadly.

---

3 [redacted]

**VII. Conclusion**

For the reasons stated above, the Government respectfully requests that the Court impose a sentence of 42 months' imprisonment and one year of supervised release.[4]

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: ______________________________
William K. Stone
Assistant United States Attorney
Tel: (212) 637-2521

cc: Peter E. Quijano, Esq. (by ECF and Email)

[4] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same). The Government respectfully submits that all three of the special conditions proposed by Probation in the PSR (PSR at 25–26) are appropriate here, largely for the reasons given by Probation.